**SO ORDERED.**

**SIGNED** this 21 day of June, 2010.

_____
J. Rich Leonard
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| RODNEY ALLEN MCCOWAN, | 09-10347-8-JRL |
| DEBTOR. | Chapter 11 |

### ORDER

This case is before the court on the debtor's motion to confirm his chapter 11 plan and the motion of Bank of America for relief from the automatic stay. A hearing took place in Raleigh, North Carolina on May 27, 2010.

### BACKGROUND

On November 30, 2009, Rodney McCowan (the "debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Bank of America's secured claim derives from a promissory note signed by the debtor and his ex-wife on April 5, 2002 in the original principal amount of $1,725,000. This note was secured by a deed of trust encumbering land at 222 Tennwood Court in Durham, North Carolina and any future improvements on the land. In October of 2004, the construction of a residence on the property (the "Tennwood house") was complete, and the note converted from a construction loan to a permanent mortgage loan.

Subsequently, the debtor, his ex-wife, and their family moved into the Tennwood house. In January of 2005 the debtor began commuting from Durham, North Carolina to California where he obtained employment. The debtor made his last full monthly mortgage payment in September 2008, and he did not made any other payments until February of 2010, which was two months after the petition date. The debtor's 27-year old son currently lives in the Tennwood house, and the debtor plans to move back into the house at the conclusion of the bankruptcy proceedings.

The debtor currently works for a company based in Massachusetts and resides in hotels there during the week. He resides on most weekends in an apartment leased by his girlfriend, Debra Landers, in California, but spends three to four nights a month in the Tennwood house. Landers' California based company currently pays her a salary of $300,000. The debtor and his ex-wife legally separated on July 1, 2006 and are now divorced. Currently, debtor and his ex-wife remain jointly and severally obligated on the promissory note.

## DISCUSSION

Section 362 of the Bankruptcy Code provides that a debtor's bankruptcy automatically stays "any act to obtain possession of . . . or to exercise control over property of the estate," as well as "any act to collect . . . or recover a claim against the debtor that arose before the commencement of the case . . . ." 11 U.S.C. §362(a)(3),(6). However, the court may terminate the automatic stay - (1) for cause, including lack of adequate protection of a property interest; and (2) if the debtor has no equity in the property and the property is not necessary to an effective reorganization. Id. § 362(d)(1)-(2). In order for property to be necessary for an effective reorganization, the debtor must demonstrate that an effective reorganization is realistically possible; the mere fact that the property is indispensable to the debtor's survival is

insufficient.  See In re Albany Partners, Ltd. 749 F.2d 670, 673 (11th Cir. 1984).  The plan for reorganization must have a reasonable probability and must be more than a "mere financial pipe dream."  In re Global Ship Systems, LLC, 391 B.R. 193, 208 (Bankr. S.D. Ga. 2007).

Bank of America argues that it is entitled to relief from the stay under both provisions of §362(d).  First, Bank of America argues that cause exists to lift the stay because its interest in the collateral is not adequately protected.  Second, Bank of America asserts that there is no equity in the property and that the property is not necessary for an effective reorganization because the debtor has no reasonable possibility of successfully reorganizing.  In response, the debtor asserts that the automatic stay should not be lifted because Bank of America's interest in the collateral is adequately protected as the debtor has been making monthly interest payments, and the proposed plan of reorganization is feasible and confirmable.

At hearing, Bank of America and the debtor stipulated the value of the Tennwood house to be $870,000.  The balance on the mortgage is $1,423,000, and thus the debtor does not have any equity in the property.  The Debtor's proposed treatment of Bank of America's claim would pay approximately $1,600,000 over a period of 30 years at 5 percent interest and would have a total payout with a present value of  $870,000.  Bank of America filed notice of conditional election under 11 U.S.C. § 1111(b)(2) in the event that the court would not grant relief from the stay.

In her testimony, Landers testified that she has and will continue to contribute $6,300 per month to the debtor in order to compensate for the difference between the debtor's income and his monthly expenses. While not currently married to the debtor, Landers maintains that she intends to make these monthly payments to the debtor for the next 30 years.  While Landers has

only been to Durham a few times, she pledges that she and the debtor intend to "integrate" their lives in one place, in the Tennwood house, upon the plan's confirmation. Landers also indicates that she intends to find comparable employment at another technology company upon moving to the Durham area. She has not had any interviews or phone calls for potential job offers at this point.

The court finds that Bank of America is entitled to relief under §362(d)(2). There is no equity in the collateral and there is no reasonable possibility of an effective reorganization. First, the plan for reorganization is not possible because it violates the anti-modification provision of 11 U.S.C. § 1123(b)(5). This provision prohibits the modification of "a security interest in real property that is the debtor's principal residence." Id. When determining whether real property is a person's principal residence under § 1123(b)(5) and § 1322(b)(2),[1] courts are split on the appropriate time. In re Roemer, 421 B.R. 23, 25 (Bankr. D.D.C. 2009). Some courts say the appropriate time for this determination is when the debtor grants the security interest. See In re Smart, 214 B.R. 63, 68 (Bankr. D. Conn. 1997). Other courts say it is the time the debtor files the petition. See In re Wetherbee, 164 B.R. 212, 215 (Bankr. D.N.H. 1994).

According to the record the principal residence of the debtor is Durham at either time. First, the Tennwood house is the principal residence if the appropriate time is the date of the petition - November 30, 2009. Although the debtor is spending weekends in California temporarily with Landers, there is no evidence that he registered to vote in California, voted in

---

[1] The antimodification provision in § 1322(b)(2) mirrors that of the one in §1123(b)(5). Since there are relatively few cases which deal with § 1123(b)(5), it is appropriate to use cases interpreting § 1322(b)(2). In re Lievsay, 199 B.R. 705, 708 (B.A.P. 9th Cir. 1996) (explaining how the congressional intent to harmonize § 1123(b)(5) and § 1322(b)(2)'s treatment of home mortgages, and the nearly identical language of the two sections justify such an approach). Id.

California, had a vehicle registered in California, or leased the Tennwood house; these were all factors other bankruptcy courts used to make the principal residence determination. See, e.g., In re Saglio, 153 B.R. 4, 5 (Bankr. D.R.I. 1993). On the other hand, at the time of the petition, the debtor's two cars were registered and located in North Carolina, and he has filed state taxes in North Carolina every year since 2004. The debtor's son was and is living in the Tennwood house free of charge so that it can be maintained until the debtor and Landers move into it. At hearing, the debtor testified that he and Ms. Landers intended to move back to the house at the conclusion of the bankruptcy proceedings.

      The same finding results for the other time period, the time the debtor completed the loan agreement - October 6, 2004. At this time, the expressed intent of the debtor was for the home to be his principal residence. In determining whether a property is the principal residence at the time the loan was made, courts have looked at the "predominant character of the transaction, and what the lender bargained to be within the scope of its lien. If the transaction was predominantly viewed by the parties as a loan transaction to provide the borrower with a residence, then the antimodification provision will apply." In re Brunson, 201 B.R. 351, 353 (Bankr. W.D.N.Y. 1996). Here this was clearly the case as the deed of trust dated April 5, 2002 and its later amended version both state that "Borrower shall occupy, establish, and use the property as borrower's principal residence . . . ." (See Construction Loan Rider 1).

      Based on these facts it would elevate form over substance to deny that the Tennwood house is the debtor's principal residence. According to his testimony, he spent four years designing it as his "dream home." Members of his family have occupied it continuously and he stays there regularly. The entire purpose of this bankruptcy is to modify the terms of the Bank of

America loan so that he can retain it as his principal residence.  Applying the antimodification provision here aligns with the congressional intent of encouraging home mortgage lending as the Supreme Court stated in Nobelman.  In re Brunson, 201 B.R. 351 (Bankr. W.D.N.Y. 1996) (citing Nobelman v. American Savings Bank, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993).  As the principal residence at both time periods is the Tennwood house, this loan cannot be modified and thus the debtor's plan is not feasible.

    Second, the debtor has no reasonable possibility of effectively reorganizing because the debtor's proposed plan payments are not feasible.  The debtor has hardly changed his lifestyle during the chapter 11 proceeding and has seen a deficit most months; the only way he will cover his expenses and monthly payments according to the chapter 11 plan is if Landers makes monthly contributions of $6,300 for the next 30 years.  According to both the debtor and Landers' testimony, these payments are the key to the success of the plan, yet the debtor has failed to provide sufficient evidence that they can be depended upon over the life of the plan.  There is no evidence that Landers is likely to promptly find a job in this area which will pay her $300,000.  Furthermore, Landers is not obligated on the note and there is insufficient evidence that she will continue making these payments once the bankruptcy proceedings are over.  As Bank of America's loan cannot be modified and the debtor has not convinced the court that he can make the monthly payments as proposed in the plan, there is no reasonable possibility that the plan will be confirmed.  Thus there is cause to lift the stay because there is no equity in the property and the property is not necessary for an effective reorganization.

    Based on the foregoing, Bank of America's motion for relief from the stay is **ALLOWED**.  Confirmation of the debtor's chapter 11 plan is **DENIED**.

**"END OF DOCUMENT"**