## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| **RODNEY ALLEN MCCOWAN** | ) | CASE NO. 09-10347-8-___ |
| | ) | |
| | ) | |
| Debtors. | ) | |

## MOTION TO REOPEN CHAPTER 7 CASE AND
## STAY STATE COURT PROCEEDINGS

NOW COMES Rodney Allen McCowan, the Debtor, and asks this Court to reopen his Chapter 7 case and stay the Durham County State Court Proceeding filed by Bank of America, N.A. (hereinafter "BOA"), Case No. 16 CVS 4070. In support of this motion, the Debtor states the following:

1. The Debtor filed for relief under Chapter 11 of the Bankruptcy Code on November 30, 2009. The Order converting the Chapter 11 case to Chapter 7 was entered on August 4, 2010.

2. The Debtor listed real property located at 1211 Champions Pointe Drive, Durham, North Carolina 27715 (hereinafter "Real Property") on Schedule A of his petition.

3. On Schedule D of his petition, the Debtor listed a lien on the Real Property in favor of BOA in the amount of $268,121.00.

4. On November 4, 2010, the Debtor received his bankruptcy discharge.

5. On February 16, 2011, the Final Decree was entered, and his case was closed.

6. Unbeknownst to the Debtor, BOA never had him sign a deed of trust against the property.

7.   On July 19, 2016, BOA filed a Complaint, case number 16 CVS 4070 (hereinafter "Complaint"). At that time, the Debtor resided in California, and it was not until August 2016 that he became aware of BOA's Complaint.

8.   On August 22, 2016, Debtor's counsel contacted BOA's counsel to state that the Complaint was in violation of the discharge injunction.

9.   On August 29, 2016, BOA filed its First Amended Complaint (Exhibit A), which removed its request for a judgment against the Defendant. However, BOA still requested a lien on the Debtor's property.

10.  The Original Complaint from BOA violated the Court's discharge injunction in that it requested a judgment against the Debtor.

11.  The Debtor asserts that the continued prosecution of this lawsuit against the Debtor and his property is a direct violation of the discharge injunction.

12.  On June 6, 2017, BOA filed a Motion for Summary Judgment which is scheduled to be heard on July 17, 2017 in Durham.

13.  On June 22, 2017, Debtor's counsel received the Notice of Hearing on BOA's Motion for Summary Judgment.

14.  The Debtor requests that the Court reopen his bankruptcy case and stay BOA's Complaint to allow him the ability to file a motion for violation of discharge against BOA.

WHEREFORE, the Debtor respectfully requests that the case be reopened and that this Court stay the Durham County State Court Proceeding filed by Bank of America, N.A., Case Number 16 CVS 4070.

This the 22nd day of June, 2017.

      JANVIER LAW FIRM, PLLC

      <u>/s/ William F Braziel III</u>
      William P. Janvier, N.C.S.B. No. 21136
      William F. Braziel III, N.C.S.B. No. 39541
      Attorneys for Debtor
      311 East Edenton Street
      Raleigh, NC 27601
      Telephone: (919) 582-2323
      Facsimile: (866) 809-2379

## **CERTIFICATE OF SERVICE**

I, William F. Braziel III, do hereby certify that a true copy of the foregoing was electronically filed through CM/ECF and served on the parties listed below by depositing a copy of the same in the United States mail bearing sufficient postage or electronically as indicated below:

Marjorie K. Lynch   (Via CM/ECF)
Bankruptcy Administrator
Post Office Box 3758
Wilson, NC 27895-3758

Gregory B. Crampton (Via CM/ECF)
Chapter 7 Trustee
P.O. Box 18237
Raleigh, NC 27619

Jason Purser
Shapiro & Ingle
10130 Perimeter Parkway, Suite 400
Charlotte, NC 28216

Bank of America, N.A. fka Countrywide Home
Attn: Managing Agent
7105 Corporate Drive
Plano, TX 75024

Bank of America, N.A.
Attn: Managing Agent
160 Mine Lake Ct. Ste 200
Raleigh, NC 27615

Rod Mccowan
1436 Cabrillo Ave.
Burlingame, CA 94010

This the 22nd day of June, 2017.

JANVIER LAW FIRM, PLLC

/s/ William F Braziel III
William P. Janvier, N.C.S.B. No. 21136
William F. Braziel III, N.C.S.B. No. 39541
Attorneys for Debtor
311 East Edenton Street
Raleigh, NC 27601
Telephone: (919) 582-2323/Facsimile: (866) 809-2379

Exhibit A

# STATE OF NORTH CAROLINA

DURHAM County

File No. 16-CVS-4070

In The General Court Of Justice
☐ District  ☒ Superior Court Division

**Name And Address Of Plaintiff 1**
BANK OF AMERICA, N.A.
c/o Rogers Townsend & Thomas PC
3800 Arco Corporate Drive, Suite 250
Charlotte    NC    28273

**Name And Address Of Plaintiff 2**

## GENERAL
### CIVIL ACTION COVER SHEET
☐ INITIAL FILING    ☒ SUBSEQUENT FILING

Rule 5(b), General Rules of Practice For Superior and District Courts

**Name And Address Of Attorney Or Party, If Not Represented** (complete for initial appearance or change of address)
John P. Fetner
3800 Arco Corporate Drive
Suite 250
Charlotte    NC    28273

**VERSUS**

**Name Of Defendant 1**
ROD MCCOWAN A/K/A RODNEY A. MCCOWAN
91 Morton Way
Palo Alto    CA    94303

Telephone No. 704.442.9500
Cellular Telephone No.
NC Attorney Bar No. 41811
Attorney E-Mail Address  john.fetner@rtt-law.com

**Summons Submitted** ☒ Yes ☐ No

☒ Initial Appearance in Case    ☐ Change of Address

**Name Of Defendant 2**

**Name Of Firm** Rogers Townsend & Thomas PC
FAX No. 704.442.5749
**Counsel for** ☒ All Plaintiffs ☐ All Defendants ☐ Only (list party(ies) represented)

**Summons Submitted** ☐ Yes ☐ No

☐ Jury Demanded In Pleading
☐ Complex Litigation

☐ Amount in controversy does not exceed $15,000
☐ Stipulate to arbitration

## TYPE OF PLEADING

(check all that apply)
☐ Amend (AMND)
☐ Amended Answer/Reply (AMND-Response)
☒ Amended Complaint (AMND)
☐ Assess Costs (COST)
☐ Answer/Reply (ANSW-Response) (see Note)
☐ Change Venue (CHVN)
☐ Complaint (COMP)
☐ Confession Of Judgment (CNJF)
☐ Consent Order (CONS)
☐ Consolidate (CNSL)
☐ Contempt (CNTP)
☐ Continue (CNTN)
☐ Compel (CMPL)
☐ Counterclaim (CTCL) Assess Court Costs
☐ Crossclaim (list on back) (CRSS) Assess Court Costs
☐ Dismiss (DISM) Assess Court Costs
☐ Exempt/Waive Mediation (EXMD)
☐ Extend Statute Of Limitations, Rule 9 (ESOL)
☐ Extend Time For Complaint (EXCO)
☐ Failure To Join Necessary Party (FJNP)

(check all that apply)
☐ Failure To State A Claim (FASC)
☐ Implementation Of Wage Withholding In Non-IV-D Cases (OTHR)
☐ Improper Venue/Division (IMVN)
☐ Including Attorney's Fees (ATTY)
☐ Intervene (INTR)
☐ Interplead (OTHR)
☐ Lack Of Jurisdiction (Person) (LJPN)
☐ Lack Of Jurisdiction (Subject Matter) (LJSM)
☐ Modification Of Child Support In IV-D Actions (MSUP)
☐ Notice Of Dismissal With Or Without Prejudice (VOLD)
☐ Petition To Sue As Indigent (OTHR)
☐ Rule 12 Motion In Lieu Of Answer (MDLA)
☐ Sanctions (SANC)
☐ Set Aside (OTHR)
☐ Show Cause (SHOW)
☐ Transfer (TRFR)
☐ Third Party Complaint (list Third Party Defendants on back) (TPCL)
☐ Vacate/Modify Judgment (VCMD)
☐ Withdraw As Counsel (WDCN)
☐ Other (specify and list each separately)

**NOTE:** All filings in civil actions shall include as the first page of the filing a cover sheet summarizing the critical elements of the filing in a format prescribed by the Administrative Office of the Courts, and the Clerk of Superior Court shall require a party to refile a filing which does not include the required cover sheet. For subsequent filings in civil actions, the filing party must either include a General Civil (AOC-CV-751), Motion (AOC-CV-752), or Court Action (AOC-CV-753) cover sheet.

AOC-CV-751, Rev. 1/14
© 2014 Administrative Office of the Courts

(Over)

## CLAIMS FOR RELIEF

- [ ] Administrative Appeal (ADMA)
- [ ] Appointment Of Receiver (APRC)
- [ ] Attachment/Garnishment (ATTC)
- [ ] Claim And Delivery (CLMD)
- [ ] Collection On Account (ACCT)
- [ ] Condemnation (CNDM)
- [x] Contract (CNTR)
- [ ] Discovery Scheduling Order (DSCH)
- [ ] Injunction (INJU)

- [ ] Limited Driving Privilege - Out-Of-State Convictions (PLDP)
- [ ] Medical Malpractice (MDML)
- [ ] Minor Settlement (MSTL)
- [ ] Money Owed (MNYO)
- [ ] Negligence - Motor Vehicle (MVNG)
- [ ] Negligence - Other (NEGO)
- [ ] Motor Vehicle Lien G.S. 44A (MVLN)
- [ ] Possession Of Personal Property (POPP)

- [ ] Product Liability (PROD)
- [x] Real Property (RLPR)
- [ ] Specific Performance (SPPR)
- [x] Other *(specify and list each separately)*
  Constructive Trust, Equitable Lien, Judicial Foreclosure, Possession of Real Property

Date: 9/29/2016

Signature Of Attorney/Party: *[signed]*

**FEES IN G.S. 7A-308 APPLY**
Assert Right Of Access (ARAS)
Substitution Of Trustee (Judicial Foreclosure) (RSOT)
Supplemental Procedures (SUPR)

**PRO HAC VICE FEES APPLY**
Motion For Out-Of-State Attorney To Appear In NC Courts In A Civil Or Criminal Matter (Out-Of-State Attorney/Pro Hac Vice Fee)

| No. | ☐ Additional Plaintiff(s) |
|---|---|
| | |
| | |
| | |
| | |

| No. | ☐ Additional Defendant(s) ☐ Third Party Defendant(s) | Summons Submitted |
|---|---|---|
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |

*Plaintiff(s) Against Whom Counterclaim Asserted*

*Defendant(s) Against Whom Crossclaim Asserted*

AOC-CV-751, Side Two, Rev. 1/14
© 2014 Administrative Office of the Courts

513081-06896

| | |
|---|---|
| STATE OF NORTH CAROLINA<br><br>COUNTY OF DURHAM<br><br>BANK OF AMERICA, N.A.<br><br>        Plaintiff,<br><br>v.<br><br>ROD MCCOWAN A/K/A RODNEY A. MCCOWAN<br><br>        Defendants. | IN THE GENERAL COURT OF JUSTICE<br>SUPERIOR COURT DIVISION<br>16-CVS-4070<br><br><br><br>**FIRST AMENDED COMPLAINT** |

## COMPLAINT

Plaintiff, complaining of Defendants, alleges and avers as follows:

### PARTIES

1. Bank of America, N.A. is a National Banking Association ("Plaintiff") and is authorized to conduct business in North Carolina.

2. Upon information and belief, Defendant ROD MCCOWAN A/K/A RODNEY A. MCCOWAN ("Defendant McCowan") is a citizen and resident of Durham County, North Carolina.

### SUBJECT MATTER JURISDICTION

3. Subject matter jurisdiction over this cause is conferred upon and vested in the Court under and by virtue of N.C. Gen Stat. § 7A-240, § 7A-243.

### VENUE

4. Venue for this action is properly laid in this Court pursuant to N.C. Gen Stat. §§ 1-76, et. seq.

### STATUTE OF LIMITATION/REPOSE

5. This action has been brought within all applicable statutes of limitation and repose.

## FACTUAL ALLEGATIONS

6. Defendant Rodney A. McCowan conveyed fee title to the Subject Property by general warranty deed of Habitech Enterprises, Inc. dated January 13, 2001, and recorded on January 23, 2001, in Book 2985, at Page 697, of the Durham County Public Registry ("Vesting Deed"). A true copy of the Vesting Deed is attached as "Exhibit 1," and is incorporated by reference. Plaintiff craves reference to the legal description included within the Vesting Deed as the description of the real property that is the subject of this action ("Subject Property") and described in the paragraph below:

**Being all of Lot 39, Treyburn Subdivision, Section 27, Phase 1, as recorded in Map Book 144, Pages 92-93, Durham County Registry.**

7. On or about February 21, 2003, Defendant McCowan borrowed the principal sum of $292,820.97 from Plaintiff and in order to evidence that debt, executed and delivered to Plaintiff a Promissory Note referencing the property at 1211 Champions Pointe Drive, Durham, NC 27715-9080 (hereinafter "Note") in the original principal sum of $292,820.97. Plaintiff is the original lender and is in possession of the original Note. Plaintiff is the holder of the Note and is permitted to enforce the provisions and terms of the Note. A true copy of the Note is appended hereto as **Exhibit 2** and incorporated herein by reference.

8. The Note has a Paragraph within its contents entitled "Collateral" that states the following:

*I acknowledge this Note is secured by the following collateral described in the security instrument listed herein, all the terms and conditions of which are hereby incorporated and made a part of this Note: a Deed of Trust dated February 21, 2003, to a trustee in favor of Lender on real property located in Durham County, State of North Carolina.*

9. On or about June 30, 2009, Defendant executed a Loan Modification Agreement to Plaintiff establishing a new Principal Balance of $289,127.83 and evidencing the agreement of Defendant to pay Plaintiff the amounts owed pursuant to the Loan Modification. The executed loan modification agreement stated within the agreement amends "…(2) the Security Instrument securing the Note which covers the real and personal property described in said Security Instrument and defined therein as 'Property,' located at: 1211 Champions Pointe Dr, Durham, NC 27721. A true and accurate copy of the Loan Modification is attached hereto as **Exhibit 3** and fully incorporated herein by reference.

10. Subsequently, Defendant McCowan filed a Bankruptcy Action (Case No. 09-10347-8) in the Eastern District of North Carolina. In Schedule D of Defendant McCowan's Plan, Plaintiff is identified as having a secured claim and primary mortgage for the real property at 1211 Champions Point Drive, Durham NC

27712. A true and accurate copy of Schedule D of the Bankruptcy Scheduled D is attached hereto as **Exhibit 4.**

11. Through inadvertence or mutual mistake, the Security Instrument was not recorded in Durham County upon its execution. Also, after a thorough and diligent search by Plaintiff, a copy of the Security Instrument could not be found in its records.

12. In order to secure repayment of the Note, all parties intended that Plaintiff, the original Lender, would be the beneficiary of a Security Instrument with a valid first lien interest on the Subject Property.

13. Defendant, having defaulted under the payment provisions of the Note and Loan Modification Agreement by not making payments as agreed according to the terms of the Note and Loan Modification Agreement, is in default for the April 1, 2011 payment and subsequent months and are due for additional charges, costs, escrow advances and additional fees and costs.

14. Because of the occurrence of the foregoing event of default by Defendant, Plaintiff duly declared the entire balance due and payable and made demand for payment of the same. Despite due demand, Defendant has failed to pay the outstanding balance to Plaintiff.

15. After giving Defendants full credit for all payments and other off-sets or credits due, there is now due and owing Plaintiff from Defendant as of July 7, 2016 the principal sum of $282,692.16, together with accrued interest of $58,201.54 thereon with interest accruing at a rate of 5.790% per annum until judgment is entered and at the legal rate thereafter until paid, plus accrued late charges, costs, insurance, taxes, and fees in the sum of $32,141.85 for a total due of $373,035.55.

16. All conditions precedent to Plaintiff's right to the relief sought in this Complaint have been performed and have occurred

17. Upon information and belief, there are no persons or entities other than the parties to the present action with an interest in the Subject Property which will be affected by the present action.

### FIRST CLAIM FOR RELIEF
(Equitable Lien and Constructive Trust as Remedy)

18. The allegations of Paragraphs 1 through 17 of Plaintiff's Complaint are incorporated herein by reference.

19. Plaintiff provided the Defendant McCowan with $292,820.97 under circumstances where Plaintiff was reasonable to expect to receive consideration in the form of a lien on the Subject Property and improvements erected thereon to secure repayment of the funds.

20. Plaintiff did not provide the money gratuitously, and upon information and belief, the Defendant McCowan knew that Plaintiff expected to receive consideration in the form of a lien on the Subject Property and improvements erected thereon to secure repayment of the funds. Defendant McCowan has confirmed his understanding a lien was intended to be on the property by his execution of the Note that referenced a deed of trust dated February 21, 2003, his execution of the Loan Modification Agreement that referenced the Subject Property Address and a security instrument, and also his inclusion of Plaintiff's loan as a secured claim and mortgage on his bankruptcy filing.

21. Defendant McCowan is subject to an equitable duty to convey to Plaintiff a valid first lien Deed of Trust on the Subject Property and improvements erected thereon, and Defendant McCowan would be unjustly enriched if he were permitted to retain the Subject Property free and clear of the lien.

22. Plaintiff is entitled to a declaration that Defendant McCowan holds the Subject Property and improvements erected thereon in constructive trust and subject to a valid first lien interest of the Plaintiff consistent in all regards with the terms and conditions of a Deed of Trust.

## SECOND CLAIM FOR RELIEF
(Judicial Sale of Subject Property and Appointing a Commissioner)

23. The allegations of Paragraphs 1 through 22 hereinabove are incorporated herein by reference

24. Plaintiff is entitled to an order finding Defendant McCowan to be in default on the payment provisions specified in the Note. Specifically, the loan is due and owing for its April 1, 2011 payment and all subsequent payments.

25. Further, Plaintiff is entitled to an order authorizing and directing a commissioner appointed by the Court to sell the Subject Property, as described in the Vesting Deed and Paragraph 6 of this First Amended Complaint, and improvements thereto pursuant to Chapter 1, Article 29A, of the North Carolina General Statutes and to confirm and finalize said sale as allowed by law to satisfy such trust or lien owed to Plaintiff due to Defendant McCowan's default on the Note.

### THIRD CLAIM FOR RELIEF
(Possession of Subject Property)

26. The allegations of Paragraphs 1 through 25 of Plaintiff's Complaint are incorporated herein by reference.

27. Subsequent to the Sale confirming and upon a ten day notice to vacate and complying with any additional requirements for seeking an Order for Possession and Writ of Possession as specified under Chapter 45 of the North Carolina General Statutes, Plaintiff or the purchaser at the foreclosure sale is authorized to seek Orders for Possession and Writs of Possession to remove Defendant and any other occupants and personal possessions from the Subject Property as needed.

WHEREFORE, Plaintiff prays the Court as follows:

1. That, in its First Claim for Relief, Plaintiff be granted an order declaring that that Defendant McCowan holds the Subject Property and improvements erected thereon in constructive trust and subject to a valid first lien interest of the Plaintiff consistent in all regards with the terms and conditions of a Deed of Trust;

2. That, in its Second Claim for Relief, Plaintiff be granted an Order authorizing and directing a Commissioner appointed by the Court to sell the Subject Property, as described in the Vesting Deed and Paragraph 6 of this First Amended Complaint, and improvements thereto pursuant to Chapter 1, Article 29A, of the North Carolina General Statutes and to confirm and finalize said sale as allowed by law to satisfy such trust or lien owed to Plaintiff due to Defendant McCowan's default on the Note;

3. That, in its Third Claim for Relief, Plaintiff be granted an Order authorizing the purchaser at the foreclosure sale to seek Orders for Possession and Writs of Possession following compliance with the requirements specified under Chapter 45 of the North Carolina General Statutes to effect the removal of any occupants residing within the Subject Property following the completion of the foreclosure sale process;

4. The Court direct any final order resulting from this action be recorded in the public land records of Durham County, North Carolina, for the purpose of establishing record notice of this proceeding in the chain of title to the Subject Property; and

5.  For such other and further relief as the Court may deem just and proper.

Dated: __9/29__, 2016.

Rogers Townsend & Thomas, PC
Attorneys for Plaintiff

_____
John P. Fetner
N.C. State Bar No. 41811
3800 Arco Corporate Drive, Suite 250
Charlotte, NC 28273
Telephone: (704) 442-9500;
Email: john.fetner@rtt-law.com

(Page 1 of 3)

Excise Tax $ 645.00

FOR REGISTRATION WILLIE L. COVINGTON
REGISTER OF DEEDS
DURHAM COUNTY, NC
2001 JAN 23 10:19:22 AM
BOOK:2585 PAGE:607-609 FEE:$19.00
NC REAL ESTATE EXCISE TAX:$645.00
INSTRUMENT # 2001002499

Recording Time, Book and Page

Tax Lot No. _____ Parcel Identifier No. _____
Verified by _____ County on the ___ day of _____, 20___
by _____

Mail after recording to: Please hold for:
This instrument was prepared by Michael Sandman (without title examination)

Brief Description for the index | Lot 39, Phase 1, Section 27, Treyburn

## NORTH CAROLINA GENERAL WARRANTY DEED

THIS DEED made this 13th day of January, 2001, by and between

| GRANTOR | GRANTEE |
|---|---|
| Habitech Enterprises, Inc.<br>3700 National Drive, Suite 112<br>Raleigh, NC 27612 | Rodney A. McCowan<br><br>1211 Champions Pointe Drive<br>Durham, NC 27712 |

Enter in appropriate block for each party: name, address, and, if appropriate, character of entity, e.g., corporation or partnership.

The designation Grantor and Grantee as used herein shall include said parties, their heirs, successors, and assigns, and shall include singular, plural, masculine, feminine or neuter as required by context.

WITNESSETH, that the Grantor, for a valuable consideration paid by the Grantee, the receipt of which is hereby acknowledged, has and by these presents does grant, bargain, sell and convey unto the Grantee in fee simple, all that certain lot or parcel of land situated in the City of _____, Bahama Township, Durham County, North Carolina and more particularly described as follows:

Being all of Lot 39, Treyburn Subdivision, Section 27, Phase 1, as recorded in Map Book 144, Pages 92-93, Durham County Registry.

~~2685 @ 617~~
~~2465 @ 700~~
~~3140 @ 397~~  } 3782 @ 665 (sun/q)
~~3782 @ 645~~

The property hereinabove described was acquired by Grantor by instrument recorded in Book 2843, Page 911.

A map showing the above described property is recorded in Book 144, Pages 92-93.

TO HAVE AND TO HOLD the aforesaid lot or parcel of land and all privileges and appurtenances thereto belonging to the Grantee in fee simple.

And the Grantor covenants with the Grantee, that Grantor is seized of the premises in fee simple, has the right to convey the same in fee simple, that title is marketable and free and clear of all encumbrances, and that Grantor will warrant and defend the title against the lawful claims of all persons whomsoever except for the exceptions hereinafter stated. Title to the property hereinabove described is subject to the following exceptions:

Restrictions, easements, right-of-ways of record if any and 2001 ad valorem taxes.

IN WITNESS WHEREOF, the Grantor has hereunto set his hand and seal, or if corporate, has caused this instrument to be signed in its corporate name by its duly authorized officers and its seal to be hereunto affixed by authority of its Board of Directors, the day and year first above written.

Hibbich Enterprises, Inc.
(Corporate Name)

By: _____
President

_____
(Corporate Name)

By: _____
President

USE BLACK INK ONLY

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

NORTH CAROLINA, Wake County.
I, the undersigned, a Notary Public of the County and State aforesaid, certify that Mohiti Dalodwal personally appeared before me this day and acknowledged that he is _____ President of Hibbich Enterprises, Inc., a North Carolina corporation, and that by authority duly given and as the act of the corporation, the foregoing instrument was signed in its name by its President. Witness my hand and official stamp or seal, this 19th day of January, 2001.

My commission expires: 10-6-2003

_____ Notary Public

The foregoing Certificate(s) of _____
is/are certified to be correct. This instrument and this certificate are duly registered at the date and time and in the Book and Page shown on the first page hereof.

_____ REGISTER OF DEEDS FOR _____ COUNTY
By _____ Deputy/Assistant Register of Deeds.

# PROMISSORY NOTE



EXHIBIT 2

ACCOUNT NUMBER 7022448372

Borrower: ROD MCGOWAN
1211 CHAMPIONS POINTE DR
DURHAM, NC 27712-9080

Lender: Bank of America, N.A.
c/o North Carolina Main Office
101 S. Tryon Street
Charlotte, NC 28255

Principal Amount: $292,820.97

Date of Note: February 21, 2003

**PROMISE TO PAY.** I ("Borrower") promise to pay to Bank of America, N.A. ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Ninety-two Thousand Eight Hundred Twenty & 97/100 Dollars ($292,820.97), together with interest on the unpaid principal balance from February 26, 2003, until paid in full. The interest rate will not increase above 11.500%.

**PAYMENT.** Subject to any payment changes resulting from changes in the Index, I will pay this loan in accordance with the following payment schedule: 60 monthly consecutive principal and interest payments in the initial amount of $1,663.51 each, beginning March 28, 2003, with interest calculated on the unpaid principal balance at an initial interest rate of 5.500% per annum; 299 monthly consecutive principal and interest payments in the initial amount of $1,437.29 each, beginning March 28, 2008, with interest calculated on the unpaid principal balance at a discounted interest rate based on the changing Index (as described in the "Index Description" paragraph below) (currently 1.30000%), plus a margin of 2.750%, resulting in an initial interest rate of 4.050%; and one principal and interest payment of $1,437.79 on February 28, 2033, with interest calculated on the unpaid principal balances at an interest rate based on the changing Index (as described in the "Index Description" paragraph below) (currently 1.30000%), plus a margin of 2.750%, resulting in an initial interest rate of 4.050%. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled and that the Index does not change; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note. Unless otherwise agreed or required by applicable law, payments will be applied first to accrued unpaid interest, then to principal, and any remaining amount to any unpaid collection costs and late charges. Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the annual interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** For the first 60 payments, the interest rate on this Note will be 5.500%. Thereafter, the interest rate on this Note is subject to change from time to time based on changes in an independent index which is the changing Index (as described in the "Index Description" paragraph below) (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to me. Lender will tell me the current Index rate upon my request. The interest rate change will not occur more often than each 12 months. Subsequent adjustments will occur every 12 months. The amount of the monthly payments, beginning on the due date of the 60th payment, month after any Change Date, will be adjusted accordingly. For the first adjustment, the interest rate will not increase or decrease more than 3.000% from the initial fixed interest rate; for subsequent adjustments, the interest rate will not increase or decrease more than 2.000% from the preceding interest rate. The interest rate during the life of this Note will not increase more than 6.000% above the initial fixed interest rate. I understand that Lender may make loans based on other rates as well. The Index currently is 1.300% per annum. The Current Index, as defined in the "Index Description" paragraph below, will be added to the margin described in the "Payment" paragraph to determine the new rate. The interest rate or rates to be applied to the unpaid principal balance of this Note will be the rate or rates set forth herein in the "Payment" section. Notwithstanding any other provision of this Note, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the last payment date of the just-ending payment stream. Notwithstanding the foregoing, the variable interest rate or rates provided for in this Note will be subject to the following maximum rate. NOTICE: Under no circumstances will the interest rate on this Note be more than the lesser of 11.500% per annum or the maximum rate allowed by applicable law. Unless waived by Lender, any increase in the interest rate will increase the amounts of my payments.

**PREPAYMENT.** I may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will relieve me of my obligation to continue to make payments under the payment schedule and will be applied to the next - due payment(s). If a prepayment is insufficient to meet the entire requirements of a particular future installment then I shall be obligated to pay such portion of the installment not covered by the partial prepayment. My obligation to continue to make regular payments under the payment schedule will resume with the next payment coming due after all early payments have been applied. Early payments will reduce the principal balance due and may result in my making fewer payments. I agree not to send Lender payments marked "paid in full", "without recourse" or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under this Note, and I will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any checks or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to Lender at the address shown on my coupon book or statement.

**LATE CHARGE.** If a payment is 15 days or more late, I will be charged 4.000% of the unpaid portion of the regularly scheduled payment. This late charge shall be paid to Lender by me to compensate Lender for Lender's extra costs and expenses caused by the late payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, at Lender's option, and if permitted by applicable law, Lender may add any unpaid accrued interest to principal and such sum will bear interest therefrom until paid at the rate provided in this Note. Upon default, the total sum due under this Note will bear interest from the date of acceleration or maturity at the variable interest rate on this Note. The interest rate will not exceed the maximum rate permitted by applicable law.

**DEFAULT.** I will be in default under this Note if any of the following happen:

**Payment Default.** I fail to make any payment when due under this Note.

**Break Other Promises.** I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Note or in any agreement related to this Note, or in any other agreement or loan I have with Lender.

**False Statements.** Any representation or statement made or furnished to Lender by me or on my behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished.

**Death or Insolvency.** Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts with Lender. However, if I dispute in good faith whether the claim on which the taking of the property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Defective Collateralization.** This Note or any of the related documents ceases to be in full force and effect (including failure of any collateral

**Loan No: 7022448372**

## PROMISSORY NOTE
### (Continued)

Page 2

document to create a valid and perfected security interest or lien) at any time and for any reason.

**Collateral Damage or Loss.** Any collateral securing this Note is lost, stolen, substantially damaged or destroyed and the loss, theft, substantial damage or destruction is not covered by insurance.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then I will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if I do not pay. I will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by and interpreted in accordance with federal law and the laws of the State of North Carolina. This Note has been accepted by Lender in the State of North Carolina.

**DISHONORED ITEM FEE.** I will pay a fee to Lender of $20.00 if I make a payment on my loan and the check or preauthorized charge with which I pay is later dishonored.

**COLLATERAL.** I acknowledge this Note is secured by the following collateral described in the security instrument listed herein, all the terms and conditions of which are hereby incorporated and made a part of this Note: a Deed of Trust dated February 21, 2003, to a trustee in favor of Lender on real property located in DURHAM County, State of North Carolina.

**INDEX DESCRIPTION.** The index is based on the weekly average yield of United States Treasury securities adjusted to a constant maturity of one (1) year, as made available by the Federal Reserve Board in Statistical Release H.15. The most recent index Rate figure available as of the date 45 calendar days before each Change Date is called the "Current Index". The initial fixed interest Rate will change to an adjustable interest Rate on the first calendar day following the 60th payment due date. The date on which my initial fixed interest Rate changes to an adjustable interest Rate, and each subsequent date on which my adjustable interest Rate could change, is called a "Change Date".

**PROPERTY REQUIREMENTS.** If this Note is secured by real or personal property (the "Collateral"), you will do all things required under the Collateral agreement. If we incur an expense because you do not fulfill all the obligations of this Note, or if you or another party do not fulfill all obligations under the Collateral agreement, you will pay those expenses under this Note. If this Note is secured by insurable real or personal Collateral, you agree to obtain and keep maintained, or cause to be obtained and maintained, property insurance, flood insurance (if applicable) and any other insurance required by us for the Collateral in an amount described in the Collateral agreement. You will pay the charge for such insurance, which may be subject to interest at the rate described in this Note. We have the option to reschedule your regular payments for the remaining term (thus increasing the regularly scheduled payment to incorporate the amount of insurance premium plus finance charges on the premium), require a lump sum payment at the maturity of the Note, or demand payment of the premium for this insurance.

**PAYMENT INFORMATION.** If you make a payment(s) before or after the due date, the amount of your final payment may be higher or lower than the original scheduled amount. We may accept late payments or partial payments, even though marked "Payment in Full" (or a similar notation). We may accept payments accompanied by a letter stating that acceptance of the payment indicates our agreement to the terms set forth in the letter without giving up, waiving or losing any of our rights under law or under this Note. You will make all payments by check or money order, payable to us, drawn in U.S. dollars and payable through a U.S. financial institution or the U.S. Post Office. We will credit payments to this Note on the business day received if received before 2:00 P.M. at the location we specify or at one of our banking centers in the state of our address first described above. Otherwise, payments may not be credited to your loan for up to five (5) business days, even if payment is received under our arrangement with an affiliated bank to accept payments from our customers or at one of our ATMs. A business day is any day Monday through Friday that is not a legal holiday. Unless otherwise required by applicable law, to determine whether a late charge is due, we will apply any payment received to the oldest payment due.

**AUTOMATIC PAYMENT AND RESERVATION OF RIGHTS.** If you choose to have payments made from a designated account and have arranged with us to do so, we will automatically draft the payment. Drafts will be made on the payment due date or immediately after the payment due date (if the payment due date is on a Saturday, Sunday or legal holiday). If your account does not contain the payment amount due, you understand that it is your obligation without notice from us to make the full payment. Even if you make a manual payment an automatic payment will be drafted from your designated account, unless you make such manual payment for the full payment due at least three (3) business days prior to the due date; however, if you make less than a full manual payment at least three (3) business days prior to the due date, only the remaining amount currently due will be drafted. To stop an automatic draft, you must contact us at least three (3) business days prior to the scheduled payment draft date. We may accept late payments, partial payments or checks and money orders marked "payment in full" (or similar notations) or payments accompanied by a letter stating that our acceptance of the payment indicates our agreement to the terms set forth in the letter without giving up, waiving or losing any of our rights under law or under this Agreement.

**MISCELLANEOUS.** If this Note or Agreement represents a renewal, modification, extension, substitution or consolidation of an obligation owed to us, then you acknowledge and agree that there are no claims, setoffs, avoidances, counterclaims or defenses or rights to claims, setoffs, avoidances, counterclaims or defenses to payment or enforcement of the prior obligation. You agree that if this Note or Agreement is in default, including the failure to make the Minimum Payment by the due date, you will accept calls regarding the collection of this Note or Agreement at any residence or place of employment. The calls can be automatically dialed and a recorded message may be played. You agree such calls will not be "unsolicited" calls for purposes of any federal, state or local law. To improve customer service and security, telephone communications with you may be monitored and recorded. You agree that monitoring or recording may be done and that no additional notice to you or additional approval from you is needed. You authorize us, our parent company, Bank of America Corporation (or any successor company) and Bank of America Corporation's affiliates and subsidiaries ("Affiliates") to: (a) obtain other information deemed necessary concerning the granting and maintaining of this Note or Credit Line Account, including the obtaining of credit bureau and other reports concerning your credit experience and other information from credit reporting agencies, creditors, any department of motor vehicles or similar state agency, your employer (past, present and future) and other persons (and all such entities may release and/or verify such information to us at any time without notification to you or without your consent), and (b) share information with our Affiliates, except to the extent that you have opted out of such sharing as provided in our Privacy Policy for Consumers. This Note or Agreement constitutes the entire understanding and agreement between the parties as to the matters set forth in this Note or Agreement and supersedes all prior understandings and correspondence, oral or written, with respect to the subject matter hereof. We reserve the right to defer or delay the date certain changes are to occur without notice and without being liable for any such deferment or delay. A court decree for divorce or separation or a non-court approved mutual agreement does not affect, eliminate or reduce any person's liability for the Note or Credit Line balance if we are not a party to the decree or agreement. Notwithstanding any other provision contained in the Note or this Agreement, we do not intend to charge, and you shall not be required to pay, any amount of

Loan No: 7022448372

**PROMISSORY NOTE**
(Continued)

Page 3

finance charge or fee more than the maximum permitted by applicable law. Any payment in excess of the maximum shall be refunded to you or credited against principal, at our option. If this Note or CreditLine Agreement is a renewal of a prior Note or CreditLine Agreement, then it is the intent of the parties that the Note or CreditLine Agreement evidencing the original extension of credit not be extinguished by the renewal. It is further the intent of the parties that no novation shall occur by the renewal of such extension of credit. Our records shall be evidence of whether this Note or CreditLine Agreement is a renewal. The word "you" shall also mean Borrower. The word "we" shall also mean Lender.

ADDITIONAL GENERAL PROVISIONS. We reserve the right to waive or reduce any or all fees from time to time in our sole discretion without notice. Unless required by law, we need not pay any refund if the amount is less than one dollar ($1.00). Acceptance of partial payments or partial performance shall not operate as a waiver of any requirement under this Note. Any notice from us shall be deemed to be reasonable if mailed to your address at least five (5) calendar days before the time of the event to which such notice relates. It is your sole and exclusive responsibility to determine any and all aspects of federal, state and local tax law regarding the deduction of interest and costs on this Note. You should consult a tax advisor regarding the deductibility of interest and costs incurred under this Note. We have not provided and do not provide tax advice of any kind. At any time, we may assign or transfer this Note to another person or entity and the assignee will have all of our rights under this Note. You cannot assign or transfer any of your rights or responsibilities under this Note.

RIGHT OF SETOFF. Borrower agrees and authorizes Lender, upon an event of default occurring and to the extent allowed by applicable law, to charge, withdraw or set off all sums owed under this Note or Agreement against any of Borrower's deposits and accounts or securities now or hereafter in the possession of or on deposit with Lender or any Bank of America Corporation affiliate or subsidiary, including without limitation all accounts held jointly with someone else and all accounts Borrower may open in the future (excluding all IRA, Keogh and trust accounts), without prior notice to or demand on Borrower and, at Lender's option, administratively to freeze all such accounts to allow Lender to protect Lender's rights provided in this paragraph. Borrower hereby grants to Lender a contractual possessory security interest in such accounts, and hereby assigns, conveys, delivers, pledges and transfers to Lender all of Borrower's rights, title and interest in such accounts.

BORROWERS PROTECTION PLAN. (Borrowers Protection Plan is a registered trademark of Bank of America Corporation.) If you selected the optional Borrowers Protection Plan, each of the Borrowers covered by the Plan must sign the Optional Borrowers Protection Plan Addendum, which is made a part of and incorporated into this Note. Interest is not charged on the fees for Borrowers Protection Plan.

FL LOANS ONLY: BOOKING/MAINTENANCE FEE. A portion of the Bank Fee (an amount equal to the lesser of $50 or 2% of the Amount of the Note), if any, disclosed in the Itemization of Amount Financed, is a booking/maintenance fee as provided by Florida Statutes, Section 658.49 (as amended from time to time). Any amount above the booking/maintenance fee is either a loan or an origination fee. All fees, charges and other expenses of this loan (if this Promissory Note is secured by real property) are authorized pursuant to Chapter 665, Florida Statutes and Chapter 687.12, Florida Statutes.

SUCCESSOR INTERESTS. The terms of this Note shall be binding upon me, and upon my heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

GENERAL PROVISIONS. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. I and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

PRIOR TO SIGNING THIS NOTE, I READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. I AGREE TO THE TERMS OF THE NOTE.

I ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

BORROWER:

X _____ [Seal]
ROD MCCOWAN, Individually

BANK OF AMERICA, N.A.
475 CROSSPOINT PARKWAY
GETZVILLE, NY 14068
ATTN: LOSS MITIGATION DEPT

Loan No _____    SPACE ABOVE THIS LINE FOR RECORDER'S USE

## LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement"), made this 23rd day of June, 2009, between ROD MCCOWAN, ("Borrower(s)"), and Bank of America, N.A., with offices at 475 CrossPoint Parkway, Getzville, NY 14068, ("Lender") current holder of the Note and assignee of the Security Instrument hereinafter described, amends and supplements (1) the Note dated the 26th day of February, 2003, made in the amount of $262,820.00, and (2) the Security Instrument securing the Note which covers the real and personal property described in said Security Instrument and defined therein as the "Property", located at: 1211 CHAMPIONS POINTE DR, DURHAM, NC 27712.

The real property described being set forth as follows:

### SAME AS IN SAID SECURITY INSTRUMENT

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows, notwithstanding anything to the contrary contained in the Note or Security Instrument.

1. As of the 1st day of August, 2009, the amount payable under the Note and the Security Instrument is $270,820.76 ("Unpaid Principal Balance"). The Borrower acknowledges that interest has accrued but has not been paid and the Lender has incurred, paid or otherwise advanced taxes, insurance premiums and other expenses necessary to protect or enforce its interest in the Note and the Security Instrument, and that such interest, costs and expenses in the total amount of $18,307.07 have been added to the indebtedness under the terms of the Note and Security Instrument and the loan reamortized over 480 months. When payments resume on the 1st day of September, 2009, the New Unpaid Principal Balance will be $289,127.83.

2. The Borrower(s) promise to pay the Unpaid Principal Balance, plus the interest, to the order of the Lender. Interest will be charged on the Unpaid Principal Balance at the annual step rate of 2.75% from the 1st day of August, 2009, and Borrower(s) promise to pay monthly payments of principal and interest in the amount of $993.81 beginning the 1st day of September, 2009, and on the same day of each month thereafter until the 1st day of August, 2014. Interest will be charged on the Unpaid Principal Balance at the annual step rate of 5.79% from the 1st day of August, 2014, and Borrower(s) promise to pay monthly payments of principal and interest in the amount of $1,489.66 beginning the 1st day of September, 2014, and on the same day of each month thereafter until the entire amount due and payable under the terms of the Note, Security Instrument and this Agreement are paid in full.

If on the 1st day of August, 2049, ("Maturity Date"), Borrower(s) still owe amounts under the Note, Security Instrument or this Agreement, the Borrower(s) shall pay these amounts in full on the Maturity Date.

Borrower(s) shall make the monthly payments described herein at Bank of America, N.A., 526 CrossPoint Parkway, Getzville, NY 14119 or at such other place that Lender may designate.

3. If all or any part of the Property or any interest therein is sold or transferred without Lender's prior written consent, the Lender may, at its option, require immediate payment in full of all sums due under the Note, Security Instrument and this Agreement.

If Lender exercises this option, the Lender shall give the Borrower(s) notice of acceleration. The notice shall provide a period of not less than thirty days from the date the notice is delivered or mailed within which the Borrower(s) must pay all sums due under the Note, Security Instrument and this Agreement. If Borrower(s) fail to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by the Note, Security Instrument and /or this Agreement without further notice or demand on the Borrower(s).



610   873751967   LMA 001   001



EXHIBIT 3

4. Borrower(s) will also comply with all other covenants, agreements, terms, conditions, and requirements of the Note and Security Instrument, including, without limitation, the Borrower's agreement to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower(s) are obligated to pay under the terms of the Note and Security Instrument, however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph one above.

(a) all terms and provisions of the Note and Security Instrument (if any) providing for or relating to any change or adjustment in the rate of interest payable under the note; and

(b) all terms and provisions of any adjustable rate rider or other instrument or document that is affixed to or wholly or partially incorporated into, or is a part of, the Note or Security Instrument and that contains any such terms or provision as those referred to in (a) above.

5. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and/or Security Instrument. Except as expressly provided in this Agreement, the Note and Security Instrument will remain unchanged and the Borrower and Lender will be bound by, and comply with, all of the terms and provisions of the instruments, as amended by this Agreement.

BORROWER(S):

Date 6/30/09

ROD MCGOWAN

Witness Signature
José V. Perez
Print Name

Witness Signature
ANALI'S TEGLAS
Print Name

STATE OF Massachusetts
COUNTY OF Middlesex

On June 30th, 2009, before me, the undersigned, a Notary Public in and for said State, personally appeared ROD MCGOWAN [ ] personally known to me - OR - [✓] proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature of Notary

Printed Name: Inozio Jamay

My commission expires: August 6, 2013