**SO ORDERED.**

**SIGNED this 22 day of August, 2018.**



_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

| IN RE: | CASE NO. |
|---|---|
| RODNEY ALLEN McCOWAN | 09-10347-8-SWH |
|  | CHAPTER 7 |
| DEBTOR |  |

### ORDER OVERRULING TRUSTEE'S OBJECTION TO
### AMENDED SCHEDULE C-1 EXEMPTION

The matter before the court is the Trustee's Objection to Amended Schedule C-1 Exemption ("Exemption Objection") filed on February 14, 2018, Dkt. 167. A response in opposition was filed by Rodney Allen McCowan ("Mr. McCowan" or "debtor") on February 28, 2018, Dkt. 171. A hearing was held in Raleigh, North Carolina on May 2, 2018, following which the court took the matter under advisement. After consideration of the case record, pleadings, and arguments of counsel, the court will overrule the Trustee's Objection.

*Background*

Mr. McCowan filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code[1] on November 30, 2009. His Schedule A, filed on December 21, 2009, listed an ownership interest in real property located at 1211 Champions Point Drive, Durham, North Carolina (the "Property") valued at $90,000.00, subject to a deed of trust in favor of Bank of America, N.A. ("Bank of America") in the amount of $268,121.00 (Schedule D), Dkt. 20. Schedule A also indicated that the Property was occupied by Mr. McCowan's former spouse.

The case was converted from chapter 11 to chapter 7 on August 4, 2010, Dkt. 98, and Gregory B. Crampton was appointed Chapter 7 trustee (the "Trustee"), Dkt. 107. On August 10, 2010, BAC Home Loan Servicing, LP f/k/a Countrywide Home filed Proof of Claim No. 13 in the amount of $288,121.37, in which it stated that the claim was secured, and to which it attached a recorded Deed of Trust and Promissory Note.[2]

Based upon the value of the Property as testified to by the debtor at his § 341 Meeting and the lien identified by Bank of America, the Trustee determined there was no realizable value for the estate and filed a Notice of Trustee's Intent to Abandon Property on January 28, 2011, Dkt. 123. The Notice of Abandonment provides as follows:

> Real property located at 1211 Champions Point Drive, Durham, NC 27712 (*Scheduled value $90,000, Debtor testified at 341 value $240,000 - $250,000; lienholders Bank of America, $268,121 and Durham County $4,483; no realizable value*).

---

[1] With the exception of formal citations, references to the Bankruptcy Code, **11 U.S.C. § 101 et seq**., shall be by section number only.

[2] The debtor executed a promissory note and deed of trust in favor of Bank of America, N.A. on February 21, 2003. BAC Home Loan Servicing, f/k/a Countrywide Home, is the servicer of the loan.

2

Dkt. 123 at 1, ¶ 3. No objections were filed, and the Property was deemed abandoned. The Discharge of Debtor was entered on November 4, 2010 at Dkt. 111. A Final Decree was entered on February 16, 2011 at Dkt. 128, and the case was closed.

On July 19, 2016, Bank of America initiated an action in Durham County Superior Court seeking a judicial foreclosure of the Property based on an equitable lien and money damages against the debtor, Dkt. 165 at 2-3. Bank of America also filed a *lis pendens* on the Property on August 3, 2016. On August 22, 2016, Bank of America amended its state court complaint to remove its request for a personal judgment against Mr. McCowan in light of his discharge but proceeded to pursue foreclosure. As part of his defense of the foreclosure action, and subsequent to the closing of his bankruptcy case, Mr. McCowan determined that Bank of America had filed a Certificate of Satisfaction and Affidavit of Lost Note in 2003, cancelling the deed of trust on the Property prior to the filing of the bankruptcy petition.

On June 22, 2017, Mr. McCowan filed a Motion to Reopen so that the Trustee could administer the Property as an asset of the estate, Dkt. 129. An order reopening the case was entered on September 13, 2017, and the chapter 7 Trustee was reappointed, Dkt. 143. The Trustee moved to revoke the abandonment of the Property on September 29, 2017, Dkt. 146. Finding that the Trustee justifiably relied on the representations of the debtor and Bank of America concerning the alleged existence of the lien on the Property, the court entered an order revoking the abandonment on February 9, 2018, Dkt. 165. On March 7, 2018, the Trustee filed an Objection to Bank of America's secured claim on the Property, and the court entered an order allowing the objection on June 26, 2018, Dkt. 193.

On January 16, 2018, Mr. McCowan filed an Amended Schedule C-1 claiming a homestead exemption, in the amount of $18,500.00,[3] in the Property pursuant to (North Carolina General Statutes § 1C-1601(a)(1)) Dkt. 164. The Trustee filed an objection to the Amended C-1 Schedule on February 14, 2018 (the "Objection"), and the debtor filed his response on February 28, 2018 (the "Response").

In his Objection, the Trustee contends that the debtor failed to amend his Schedule C-1 in accordance with Rule 1009(a) of the Federal Rules of Bankruptcy Procedure, Dkt. 167. Specifically, the Trustee asserts that any amendments to the petition must be made prior to the closing of the case, and that the debtor effectively lost the right to amend his exemptions upon entry of the Final Decree on February 16, 2011. At the hearing, the Trustee amended his argument to reflect that, although Rule 1009(a) does not prohibit a debtor from amending his schedules in a reopened case, the debtor, once a case is closed, must prove that his failure to amend the schedules prior to the closing of the case was the result of "excusable neglect."

The Trustee also contends that, as of the date the case was reopened, the debtor's child had reached the age of majority, therefore eliminating the debtor's right to claim a homestead exemption. At the hearing, the Trustee proffered that, under North Carolina law, the homestead exemption is conditioned on the debtor or a dependent of the debtor's continued use of the exempted property as a residence. Accordingly, the Trustee contends that the applicability of a homestead exemption should be evaluated on the date the debtor sought to claim the exemption (i.e. January 16, 2018), rather than the date the petition for bankruptcy was originally filed (i.e. November 30, 2009). The Trustee does not dispute the fact that on the date the petition was filed, the debtor's child was living on the Property and was not of majority age.

---

[3] The maximum allowable exemption on the date the Chapter 11 petition was filed (November 30, 2009).

4

In his response, the debtor contends that Rule 1009(a) allows the amendment of his Schedule C-1, so long as the amendment is made neither in bad faith, nor is prejudicial to creditors. In the alternative, the debtor asserts that if Rule 1009(a) does prohibit the amendment of his Schedule C-1 due to the closing of his prior case, then he still may can amend his exemptions based on a showing of "excusable neglect," pursuant to Rule 9006(b). Finally, the debtor maintains that the right to claim an exemption is determined by the circumstances present as of the date the petition for bankruptcy is filed.

*Discussion*

**A. Debtor's Right to Amend Schedules in Reopened Proceedings**

While Rule 4003 of the Federal Rules of Bankruptcy Procedure provides the guidelines for scheduling and objecting to property that an individual debtor intends to claim as exempt, Rule 1009(a) governs the debtor's right to amend a schedule of claimed exemptions. *In re Libbus*, No. 15-05128-5-DMW, 2018 WL 1470513, at *3 (Bankr. E.D.N.C. March 23, 2018); *In re Poulette*, 493 B.R. 729, 733 (Bankr. D. Md. 2013). In relevant part, Rule 1009(a) provides that "[a] voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time *before the case is closed*." FED. R. BANKR. P. 1009(a) (emphasis added).

Courts are split on how to apply Rule 1009(a) to cases that were closed and have been subsequently reopened. *In re Dollman*, 583 B.R. 268, 271 (Bankr. D.N.M. 2017). The *Dollman* court succinctly summarized the approaches that various courts have taken to address this issue:

> Three approaches have emerged to the application of Rule 1009(a) in a reopened case. First, the broad approach treats a reopened case the same as a case that was never closed and allows the debtor to amend schedules as a matter of course in the reopened case. *See e.g.*, *In re Goswami*, 304 B.R. 386, 392–93 (9th Cir. BAP 2003). Second, the narrow approach does not permit any amendments to schedules in a reopened case. *See, e.g.*, *In re Bartlett*, 326 B.R. 436, 439 (Bankr. N.D. Ind. 2005). Third, the middle approach applies Rule 9006(b)(1), which allows the debtor to amend schedules upon proving the failure to do so before case closure was the result

5

of excusable neglect. *See, e.g.*, *In re Moretti*, 260 B.R. 602, 607–608 (1st Cir. BAP 2001).

*Dollman*, 583 B.R. at 271–72. This court, and others in the Fourth Circuit, have adopted the "middle approach," requiring a showing of "excusable neglect" before a debtor may amend his schedules in a reopened case. *See, e.g.*, *In re Libbus*, 2018 WL 1470513 at *8-9; *In re Poulette*, 493 B.R. 729, 730 (Bankr. D. Md. 2013); *In re Dunn*, No. 05-09708-8-JRL, 2010 WL 2721201, at *2 (Bankr. E.D.N.C. July 7, 2010); *In re Wilmoth*, 412 B.R. 791, 796-797 (Bankr. E.D. Va. 2009).

The debtor contends that Rule 1009(a) affords debtors an unfettered right to amend their schedules, so long as the amendments are neither made in bad faith, nor prejudicial to creditors. The court acknowledges there is a wide breadth of case law that supports the debtor's position.[4] Nevertheless, the court chooses to follow "[t]he established precedent of this district and others within the jurisdiction of the United States Court of Appeals for the Fourth Circuit," which requires a showing of "excusable neglect," in accordance with Rule 9006(b), to amend a schedule in a reopened case. *In re Libbus*, 2018 WL 1470513 at *8. Such a conclusion balances the debtor's right to claim and enjoy exemptions to which they are entitled against the necessity for finality in the administration of bankruptcy cases and the possibility of prejudice to creditors.

In determining excusable neglect, courts in the Fourth Circuit employ the two-prong test set forth by the Supreme Court of the United States in *Pioneer Investment Services v. Brunswick*

---

[4] Several courts have found that "the debtor, under Rule 1009, may amend schedules without limitation of whether the case is open or reopened after closing." *In re Muscato*, 582 B.R. 599, 602 (W.D.N.Y. 2018). *Accord*, *Goswami v. MTC Distributing (In re Goswami)*, 304 B.R. at 392–393 (B.A.P. 9th Cir. 2003); *Towers v. Boyd (In re Boyd)*, 243 B.R. 756, 766 (N.D. Cal. 2000); *Equitable Life Assurance Co. v. Union Planters Bank (In re Jordan)*, 276 B.R. 434, 438 (Bankr. N.D. Miss. 2000); *Martin v. Avco Financial Services (In re Martin)*, 157 B.R. 268, 274 (Bankr. W.D. Va. 1993).

*Associates,* 507 U.S. 380 (1993). *See, e.g., Libbus,* 2018 WL 1470513, at *4 (citing *Thompson v. E.I. DuPont de Nemours & Co., Inc.,* 76 F.3d 530, 533 (4th Cir.1996)). This court has previously held that:

> [t]o satisfy the first prong of the test, the omission must result from neglect; the second prong requires that the neglect be "excusable." Neglect is defined with reference to Webster's Dictionary as "to leave undone or unattended to especially through carelessness," and includes situations where a party misses a deadline through "inadvertence, miscalculation, or negligence." In finding that neglect is "excusable," the court must make an equitable determination taking account of the totality of the circumstances, including: the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith. This 'elastic concept' does not require rigid application of these factors, nor does it render determinative whether the error was caused by circumstances outside the party's control.

*Libbus*, 2018 WL 1470513 at *4 (quoting *Dunn*, 2010 WL 2721201 at *2) (internal citations omitted).

In *Libbus*, the debtors sought to reopen their joint chapter 7 bankruptcy case to move for avoidance of a judicial lien on real property that was omitted from their initial schedules. *Id*. at *2. The trustee objected to the amendment, claiming the debtors lost the right to amend their exemptions upon the closing of the initial proceeding. *Id.* at *3. The male debtor testified that he was unaware of his ownership interest because he had simply forgotten the property among the many others that he and his business partner has purchased over the years. *Id.* at *3. The court sustained the trustee's objection, finding that the length of delay in disclosure and its impact on the efficient administration of the case weighed heavily against a finding of excusable neglect. *Id.* at *5.

While instructive, the *Libbus* case is distinguishable from the present case in several important ways. Primarily, unlike the debtors in *Libbus*, Mr. McCowan fully disclosed his real property interest on his initial petition, Dkt. 20. At the hearing, Mr. McCowan's counsel in his

7

initial bankruptcy case credibly explained that there were two reasons the Property was not originally scheduled as exempt. First, the schedules were completed in contemplation of filing a chapter 11 proceeding where the primary purpose was to save another house owned by the debtor that was in the midst of a foreclosure proceeding. The chapter 11 case was not driven by the liquidation test, where the amount of exemptions would be important, but by the income the debtor could devote to the plan. Additionally, when the case was converted to a chapter 7, his counsel testified that he saw no need to exempt the Property based on the amount of then known equity in the house. All parties to the proceeding relied on the representations by Bank of America that its claim was secured by a substantial lien on the Property.

In its order allowing revocation of the Trustee's abandonment, this court found that Bank of America's failure to accurately reflect the status of its debt, i.e., include the Certificate of Satisfaction and Affidavit of Lost Note in its Proof of Claim, amounted to a misrepresentation. The debtor claims his justifiable reliance on the misrepresentation by Bank of America, coupled with his primary focus on other real estate in the chapter 11, constitutes excusable neglect.

The Trustee, however, argues that it is a widely-accepted practice to take a homestead exemption in property, even if at the time of filing the petition, there is a belief that there is no available equity in the property. *See In re Rudd*, No. 12-08130-8-JRL, 2013 WL 2684541, at *2 (Bankr. E.D.N.C. June 12, 2013) ("In order to protect his right to such an exemption, the debtor must assert the exemption even though on the schedules there is no value"). The court acknowledges this practice and commends its usage, but it is not convinced that the failure to take an exemption in oversecured property is fatal to a finding of excusable neglect where there is no evidence of bad faith.

8

Based on the totality of the circumstances, the court finds that the debtor's failure to schedule the Property on the Schedule C-1 as an exempt asset resulted from excusable neglect and therefore an amendment to the schedules in this reopened case will be allowed.

**B. Effective Date of Determining Homestead Exemptions**

The Trustee next argues that North Carolina's homestead exemption (codified at North Carolina General Statutes § 1C-1601(a)) is conditioned on the continued use of real property as a residence by either the debtor or a dependent of the debtor. Furthermore, the Trustee contends that since the debtor's daughter, who resided on the Property, had reached the age of majority on the date the debtor sought to amend the schedules, the debtor may no longer claim a homestead exemption in the Property. To the contrary, the debtor maintains that the only relevant date for determining an exemption is the petition date.

Section 522 allows a debtor to elect exemptions under either federal law (as set forth in §522(d)) or applicable state law, unless the applicable state law "does not so authorize." *In re Rogers*, No. 16-02884-5-JNC, 2016 WL 5794707 at *2 (Bankr. E.D.N.C. October 3, 2016) (citing 11 U.S.C. § 522(b)). North Carolina is an "opt-out" state, and all exemptions must be claimed in accordance with North Carolina law. N.C. GEN STAT. § 1C-1601(f). Therefore, the court must look to North Carolina law when determining what exemptions are available to the debtor.

In North Carolina, exemption laws are to be liberally construed in favor of the debtor and allowance of the exemption. *Elmwood v. Elmwood*, 295 N.C. 168, 185 (1978). Liberal construction is also the norm under federal law. *See, e.g.*, *Hickman v. Hanover*, 33 F.2d 873, 874 (4th Cir. 1929). North Carolina General Statute § 1C-1601(a)(1) presently states that:

> [A] debtor is entitled to retain free of the enforcement of the claims of creditors: (1) the debtor's aggregate interest, not to exceed thirty-five thousand ($35,000) in value, in real property . . . that the debtor or a dependent of the debtor uses as a residence.

9

The Trustee relies on two cases in which the court interprets the language "uses as a residence" to confer a conditional status upon the homestead exemption: *In re Crawford*, 511 B.R. 395, 401 (Bankr. W.D.N.C. 2014)[1] and *In re Love*, 42 B.R. 317, 318 (Bankr. E.D.N.C. 1984), aff'd 54 B.R. 947 (E.D.N.C. 1985). In *Love*, the bankruptcy court was faced with the following question: Whether § 522(f)(1) requires the complete cancellation of a judicial lien that impairs an exemption under North Carolina General Statute § 1C-1601(a)(1) which allows an exemption in property that the debtor or a dependent of the debtor *uses* as a residence. That court was being asked to reconsider the language in its order which avoided the judicial lien "to the extent the lien impairs the Debtor's exemptions in this property." The court declined to change the language in its order to "completely cancel the lien without limitation," and held that exempted property is no longer considered exempt for purposes of avoidance of a judicial lien pursuant to § 522(f) when it ceases to be used as a residence by the debtor or a debtor's dependent. *In re Love*, 42 B.R. at 319.

On appeal, the district court affirmed the bankruptcy court's order, holding that using the federal statute to preempt North Carolina's homestead exemption renders irrelevant the "opt-out" provisions proscribed in § 522(d). *In re Love*, 54 B.R. at 949. In reliance upon these cases, the Trustee contends that the court must look beyond the date the petition is filed to determine whether, *at the time the exemption is sought*, the debtor or a dependent is using the property as a residence, in order for him to properly claim a homestead exemption. However, the *Love* decisions have been abrogated by the Fourth Circuit's subsequent opinion in *In re Opperman*, 943 F.2d 441 (4th Cir. 1991). In fact, the Fourth Circuit in *Opperman* specifically references the district court's reliance

---

[1] The "conditional status" finding was contained in dicta in the *Crawford* case as the court based its ruling on a finding that the property was not being used by a dependent of the debtor.

10

on the *Love* opinions[2], and expressly declines to follow them in light of the United States Supreme Court's decision in *Owen v. Owen*, 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991), reversing and remanding, 877 F. 2d 44 (11th Cir. 1989). In *Owen*, the Supreme Court held that judicial liens can be avoided under § 522(f) even though the state has defined the exempt property in such a way as specifically to exclude that kind of property.

> In *Opperman*, the Fourth Circuit, taking its guidance from the Supreme Court, held that:
>
> It is clear to this Court that the provision of N. C. Gen. Stat §1C-1604(a) limiting the homestead exemption to the duration of the debtor's actual residence in that place must not be applied in preference to the avoidance power of section 522(f). Such a lien may be avoided if it impairs the debtor's exemption, either an actual exemption under the state statute or a hypothetical federal exemption where the state has opted out of the federal scheme.

*Id.* at 443.

The court acknowledges that the *Opperman* decision is limited to a § 522(f) situation, but the *Love* decision upon which the Trustee relies, was also a § 522(f) case. The bankruptcy court had been asked to expand its § 522(f) order to cover a "complete" avoidance of the judicial lien, i.e. to avoid the lien even if circumstances changed at some point in the future which would not have at that time complied with the "continued use" condition of the state exemption. The bankruptcy court refused to do so and its decision was upheld by the district court. That holding is no longer good law in light of the *Opperman* decision. To read the *Love* decisions beyond that now abrogated holding would be improper. The decision does not support the Trustee's position that the relevant time to determine an exemption is at the time it is claimed. To the contrary, it appears that the *Love* bankruptcy court found that the conditions for the exemption had been satisfied at the time it entered its avoidance order, but refused to make that avoidance "final" for

---

[2] The court notes that the Fourth Circuit opinion contains an incorrect cite for the *Love* opinion. The correct district court cite is 54 B.R. 947 (E.D.N.C. 1985). The *Love* case was not appealed to the Fourth Circuit.

all purposes because it held that the qualification for the exemption could be revisited at a later time.

Most importantly, in *White v. Stump*, the United States Supreme Court established that a debtor's right to claim an exemption is determined by the circumstances on the date the petition is filed. 266 U.S. 310, 313 (1924); *see also Myers v. Matley*, 318 U.S. 622, 628 (1941) ("The bankrupt's right to homestead exemption becomes fixed at the date of filing petition in bankruptcy and cannot thereafter be enlarged or altered by anything the bankrupt may do"). Likewise, North Carolina bankruptcy courts have routinely determined a debtor's exemptions based on the facts in existence on the date the petition is filed.[3] *See, e.g., In re Rogers*, 2016 WL 5794707 at *2 ("In determining whether a particular piece of property is exempted, the court looks to the use of the property as of the date of the filing of the petition"); *In re Phillips*, 553 B.R. 536, 547 (Bankr. E.D.N.C. 2016) (explaining that the practice of valuing exempted property as of the petition date applies equally to determining a debtor's exemption rights); *In re Kennedy*, No. 08-81687, 2016 WL 6649200, at *4 (Bankr. M.D.N.C. Apr. 6, 2016) (finding that the debtor's "homestead exemption became fixed and vested on the date of filing the petition" and remained unaffected by the debtor's death post-petition). This court is persuaded that this analysis is correct and that it is not constrained by the *Love* decisions to the contrary.

In the present case, it is undisputed fact that the debtor's minor daughter resided on the Property on the petition date. Given the dependent status of the minor daughter and her residence on the Property, the debtor was entitled to claim a homestead exemption on the petition date, and, for the reasons aforementioned, may amend his schedules to do so now.

---

[3] Even where, as here, the case is converted from a chapter 11 to a chapter 7, exemptions are still measured by the facts in existence on the petition date, not the date the case was converted. *In re Brown*, 807 F.3d 701, 708 n.18 (5th Cir. 2015)

12

*Conclusion*

Based on the foregoing, the Trustee's Objection to Debtor's Amended Schedule C-1 is **OVERRULED**. The Debtor's claimed exemption in the amount of $18,500.00, pursuant to North Carolina General Statutes § 1C-1601(a), is **ALLOWED**.

**END OF DOCUMENT**